UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SAM M. AVINA,                        )    NO. SACV 04-00975-MAN
                                     )
            Plaintiff,               )
                                     )    MEMORANDUM OPINION AND ORDER
      v.                             )
                                     )
JO ANNE BARNHART,                    )
Commissioner of the                  )
Social Security Administration,      )
                                     )
            Defendant.               )
_____)

        Plaintiff filed a Complaint on August 12, 2004, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
disability insurance benefits and a period of disability benefits
("DIB").  42 U.S.C. § 405(g).  On September 3, 2004, the parties filed
a "Consent to Proceed Before a United States Magistrate Judge," pursuant
to 28 U.S.C. § 636(c).  The parties filed a joint stipulation on April
22, 2005, in which:  Plaintiff seeks an order reversing the
Commissioner's decision and awarding benefits or, alternatively,
remanding the case to the Commissioner with directions; and Defendant
requests that the Commissioner's decision be affirmed.  The Court has
taken the parties' briefing under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his application for DIB on March 4, 2002. (Administrative Record ("A.R.") 51-54.) Plaintiff claims to have been disabled since December 12, 2000, due to problems with his back and lower extremities and related pain. (A.R. 16, 51.) Plaintiff has past relevant work experience as a carpenter. (A.R. 16.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. (A.R. 34-37, 39-42.) On May 6, 2003, Plaintiff, who was represented by counsel, appeared at a hearing before Administrative Law Judge Milan Dostal ("ALJ"). (A.R. 192-219.) On September 25, 2003, the ALJ denied Plaintiff's request for benefits, and the Appeals Council subsequently affirmed the ALJ's decision. (A.R. 15-20, 4-7.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his September 25, 2003 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity during the period at issue. (A.R. 19.) He further found that Plaintiff has "severe" impairments, but does not have an impairment or combination of impairments listed in, or medically equivalent to an impairment listed in, Appendix 1, Subpart P, Regulation No. 4. (A.R. 19.) In addition, he found that Plaintiff is an "individual closely approaching advanced age" pursuant to 20 C.F.R. § 404.1563, has a "limited education" pursuant to 20 C.F.R. § 404.1564, and has transferable skills pursuant to 20 C.F.R. § 404.1568. (A.R. 20.)

2

The ALJ further found that "[Plaintiff's] allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision." (A.R. 19.)  The ALJ found that Plaintiff had the following residual functional capacity ("RFC") for the period at issue:

> [Plaintiff] can lift and carry 50 pounds occasionally, 25 pounds frequently.  He can sit 8 hours in an 8 hour day, 3 hours at a time.  He can stand and walk 8 hours in an 8 hour day, stand 2 hours at a time, walk 1 hour at a time.  He can frequently [bend], climb squat, crawl and reach.  However, he should avoid repetitive bending and stooping.  He should avoid climbing ladders, rope or scaffolds.  He has pain in his neck, back, shoulders and legs, and this pain is of a moderate nature and has a moderate impact on his ability to perform basic work related activities.  However, this pain can be controlled by medication without significant adverse side effects.[1]

(A.R. 19-20.)  Based on his RFC finding, the ALJ concluded that Plaintiff could not perform his past relevant work as a carpenter. (A.R. 20.)  The ALJ found, using Rule 203.20 of the Medical-Vocational Guidelines (the "Grids") as a framework and relying upon the testimony of a vocational expert, that there are a significant number of jobs in the national economy that Plaintiff could perform, such as a cabinet

---

[1]    "Medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 416.967(c); 404.1567(c).

1  assembler and cabinet finisher.[2]  (*Id.*)  The ALJ therefore concluded that
2  Plaintiff was not disabled.  (*Id.*)

3
4                              **STANDARD OF REVIEW**
5

6       This Court reviews the Commissioner's decision to determine
7  whether it is free from legal error and supported by substantial
8  evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The
9  Commissioner's decision must stand if it is supported by substantial
10 evidence and applies the appropriate legal standards.  Saelee v. Chater,
11 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a
12 mere scintilla but less than a preponderance -- it is such relevant
13 evidence that a reasonable mind might accept as adequate to support the
14 conclusion."  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

15

16      Although this Court cannot substitute its discretion for that of
17 the Commissioner, this Court nonetheless must review the record as a
18 whole, "weighing both the evidence that supports and the evidence that
19 detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary
20 of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also*
21 Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is
22 responsible for determining credibility, resolving conflicts in medical
23 testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d
24 1035, 1039-40 (9th Cir. 1995).  This Court must uphold the
25 Commissioner's decision if it is supported by substantial evidence and

26

27      [2]  Under Rule 203.20, a person who is "closely approaching
28 advanced age," with a "limited or less" education, and has transferable
   skills, is not disabled.    20 C.F.R. Pt. 220, App. 2.

                                    4

free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* <u>Morgan v. Commissioner of the Social Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff raises two issues in the Joint Stipulation. <u>First</u>, Plaintiff contends that the ALJ improperly assessed his RFC by relying upon the opinion of Dr. Glen Almquist, the non-examining medical expert, who did not review the entire record. <u>Second</u>, Plaintiff contends that his credibility was improperly rejected by the ALJ. (Joint Stip. at 4.)

**A.   Because The Court Cannot Determine Whether Dr. Almquist's Opinion Is Supported By Substantial Evidence, Plaintiff's RFC Must Be Reevaluated On Remand.**

Ordinarily, the opinions of a treating physician should be given great weight, if not controlling weight. *See* <u>Magallanes v. Brown</u>, 881 F.2d 747, 751 (9th Cir. 1989)(quoting <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1230 (9th Cir. 1987)); Social Security Ruling 96-2p. When the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific and legitimate reasons for doing so, supported by substantial evidence in the record. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ may reject the opinion of either a treating or examining physician if that opinion is conclusory, brief, and unsupported by clinical findings. Medical expert opinions may serve as substantial evidence

when "they are supported by other evidence in the records and are consistent with it." Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

In discussing the opinion of Dr. Almquist, the non-examining medical expert, the ALJ stated:

> In February, 2003, responding to interrogatories, medical expert Glen Almquist, M.D., found that based on his review of all the evidence, [Plaintiff] had degenerative arthritis/degenerative disc disease of the lumbosacral spine, L3-4, L4-5, and L5-S1, moderate, without significant radiculopathy. Dr. Almquist concluded that in his opinion, [Plaintiff] did not have an impairment or combination of impairments which met or equaled any listing in Appendix 1 to Subpart P of Regulation No. 4. Dr. Almquist further concluded that based on his review of all the evidence, [Plaintiff] was able to sit 8 hours in an 8 hour day, 3 hours at a time. He could stand and walk 8 hours in an 8 hour day, standing 2 hours at a time, walking 1 hour at a time. He could lift and carry 50 pounds occasionally, 25 pounds frequently. He had no restrictions on the use of his upper or lower extremities. He could frequently bend, squat, crawl, climb and reach. He had no environmental restrictions (Exhibit 5F).

(A.R. 17.)

1     In assessing Plaintiff's RFC, the ALJ stated:

2

3     [Plaintiff] can lift and carry 50 pounds occasionally, 25

4     pounds frequently.  He can sit 8 hours in an 8 hour day, 3

5     hours at a time.  He can stand and walk 8 hours in an 8 hour

6     day, stand 2 hours at a time, walk 1 hour at a time.  He can

7     frequently [bend], climb, squat, crawl and reach.  However, he

8     should avoid repetitive bending and stooping.  He should avoid

9     climbing ladders, rope or scaffolds.  He has pain in his neck,

10     back, shoulders and legs, and this pain is of a moderate

11     nature and has a moderate impact on his ability to perform

12     basic work related activities.  However, this pain can be

13     controlled by medication without significant adverse side

14     effects.

15

16 (A.R. 19-20.)

17

18     None of Plaintiff's treating physicians opined as to Plaintiff's

19 RFC.  Aside from Dr. Almquist's RFC assessment, the record only contains

20 an RFC assessment completed by a state agency physician whose identity

21 is unclear.  That assessment limits Plaintiff to:  performing work at

22 the "medium" level; standing, walking, and/or sitting for about six

23 hours in an eight-hour workday; occasionally climbing ramps/stairs and

24 never climbing ladders/rope/scaffolds; and occasionally, balancing,

25 stooping, kneeling, crouching, or crawling.  (A.R. 99-106.)   The ALJ

26 therefore largely relied on Dr. Almquist's opinion in determining

27 Plaintiff's RFC.

28

1    Plaintiff contends that the ALJ improperly adopted the opinion of
2    Dr. Almquist in finding Plaintiff's RFC.   Plaintiff further contends
3    that the ALJ's reliance on Dr. Almquist's opinion constitutes error,
4    because the opinion was not based on the entire record.   Specifically,
5    Plaintiff contends that the record reviewed by Dr. Almquist did not
6    contain critical records from Dr. Standiford Helm, Dr. Jack Piasecki,
7    and Dr. Jacob Rabinovich (*see* A.R. 140-87), Plaintiff's treating
8    doctors, which include objective test results.   (Joint Stip. at 7.)

9

10    The additional records cited by Plaintiff include Dr. Helm's
11    November 4, 2002 report, in which he: 1) describes the records that he
12    had received from Dr. Piasecki (which reflect that Dr. Mudiyam had
13    recommended surgery but Plaintiff declined and was transferred Dr.
14    Anderson, who found that Plaintiff would not benefit from surgery and
15    epidural injections would make his condition worse) (A.R. 174); 2) notes
16    Plaintiff's symptoms (*i.e.*, an antalgic gait, difficulty standing still
17    due to his constant pain, and positive straight leg raising) (A.R. 176);
18    and 3) recommends longer-lasting pain medication for Plaintiff, such as
19    OxyContin or Duragesic, and that Plaintiff undergo an updated diskogram
20    and IDET procedure[3] but forego steroid injections (A.R. 177).   In Dr.
21    Helm's January 3, 2003 report, he: 1) notes Plaintiff's symptoms (*i.e.*,
22    an antalgic gait, difficulty sitting in his chair and with frequent
23    standing and sitting, "[l]ower extremity flexor extensor muscle strength
24    grossly reduced bilaterally due to resulting low back pain," "[l]ow back
25    pain increased upon strength testing," and "subjective decreased

26    _____

27         [3]    An IDET (Intradiscal Electrothermal Therapy) procedure is a
     non-invasive procedure for pain relief by which a catheter is inserted
28    into a patient's spine and the disc is desensitized and the walls of the
     disc are toughened.

sensation along right posterior thigh and right great toe") (A.R. 158-59); and 2) notes the same findings regarding Plaintiff's physical examination as those set forth in his December 6, 2002 report (A.R. 159).

The reports of Dr. Piasecki include his October 22, 2002 report, in which he noted Plaintiff's assertions that:  he can sit for a maximum of 45 minutes and stand for a maximum of 30 minutes; any bending significantly aggravates his pain; and lifting in excess of 15 to 20 pounds significantly increases his pain.  (A.R. 181.)  Dr. Piasecki recommended an IDET, a non-invasive procedure, but noted that surgery would cause Plaintiff to experience increased pain and more disability. (A.R. 185.)  In Dr. Piasecki's November 19, 2002 report, he noted that Dr. Helm was in the process of trying to obtain authorization to perform an IDET procedure, and that Plaintiff's examination, subjective complaints, and diagnoses remained unchanged.  (A.R. 170-71.)  Dr. Piasecki found that Plaintiff was "temporarily totally disabled" until February 1, 2003.  (A.R. 171.)  In Dr. Piasecki's January 13, 2003 report, he noted that Plaintiff's examination, diagnoses, and complaints remained unchanged, and Plaintiff was taking OxyContin, as well as Darvocet for  break-through pain.  (A.R. 167.)

On February 7, 2003, Plaintiff underwent a three level lumbar diskogram showing that the "L3-4, L4-5 and L5-S1 were chemically sensitive" and Plaintiff "is a good candidate for a Viking procedure and a DeKompressor procedure at these levels," which "is consistent with his

previous diskogram findings."[4]  (A.R. 154-55.)

     In Dr. Rabinovich's March 10, 2003 report, he diagnosed Plaintiff
with cervical spine sprain/strain with radicular symptoms, tendinitis,
bilateral shoulders, and degenerative disc disease, lumbar spine, rule
out lumbar herniated disc.  (A.R. 146.)   He further stated that
Plaintiff was "temporarily totally disabled through, at least, April 21,
2003." (*Id.*)

     The ALJ merely summarized these additional records, which Dr.
Almquist did not review, as follows:

     In October, 2002, Jack Piasecki, M.D., observed [Plaintiff]
     had a normal gait.  He had marked tenderness about the lumbar
     spine with limited motion.  Straight leg raising was positive.
     He had left calf weakness on provocative testing.  There were
     no sensory deficits.  Dr. Piasecki's impression was mild L5
     radiculopathy on the right, left S1 radiculopathy, and
     discogenic lumbar pain with internal disc disruption (Exhibit
     8F/9).

     Notes from December, 2002, indicate [Plaintiff] had an
     antalgic gait.  However, he was able to walk on his heels and
     toes without difficulty.   There were no sensory deficits.
     Strength was decreased in the lower extremities secondary to

_____
     [4]    A DeKompressor procedure (or percutaneous disc decompression)
is a procedure by which a lumbar discectomy probe removes disc tissue,
which may relieve painful pressure on the surrounding nerves.

pain (Exhibit 7F/16).

In March 2003, Jacob Rabinovich, M.D., found [Plaintiff] had limited motion of the cervical spine with tenderness. He otherwise had full motion of the bilateral upper extremities. He had limited motion of the lumbar spine with tenderness. He had difficulty with ambulation. He had difficulty standing on his heels or toes. Straight leg raising was positive. There were no motor or sensory deficits. Dr. Rabinovich's diagnosis was cervical spine sprain/strain with radicular symptoms, tendonitis, bilateral shoulders, and degenerative disc disease, lumbar spine, rule out herniated disc. He placed [Plaintiff] on temporary disability (Exhibit 6F). The undersigned gives little weight to such classifications, however, as they are based on criteria other than Social Security Regulations (20 C.F.R. 404. 1504). Moreover, such determinations are reserved to the ALJ (20 CFR 404.1527(e)).

(A.R. 16-17.)

The ALJ was not required to accept the opinions of Plaintiff's "total temporary disability" rendered by Dr. Rabinovich or Dr. Piasecki. 20 C.F.R. §§ 404.1527(d)(6)(e)(1), 416.927(d)(6)(e)(1) ("We [the Social Security Commissioner and her designees] are responsible for making the determination or decision about whether you meet the statutory definition of disability"); Magallanes, 881 F.2d at 751 (a treating physician's opinion "[is not] necessarily conclusive as to . . . the ultimate issue of disability.") However, there is a significant

difference between Dr. Almquist's findings and the findings of Plaintiff's treating physicians regarding the limitations on Plaintiff's range of motion in his extremities and his ability to ambulate. In particular, Dr. Rabinovich found that Plaintiff had difficulty squatting and kneeling, and difficulty with ambulation. (A.R. 144-45.) In addition, in his November 4, 2002 and January 3, 2003 reports, Dr. Helm noted that Plaintiff had an antalgic gait and reduced muscle strength. (A.R. 158-59, 176.) (*See also* A.R. 184 -- Dr. Piasecki's October 9, 2003 report diagnosing Plaintiff with L5 radiculopathy on the right and S1 radiculopathy on the left.)

Dr. Almquist, who did not examine Plaintiff, simply found that Plaintiff could stand for up to two hours and walk for up to one hour during an eight-hour workday and could bend, squat, crawl, climb, and reach frequently (A.R. 132-36). While the ALJ ultimately placed some additional postural limitations on Plaintiff's RFC, which Dr. Almquist did not recommend (*viz.*, precluding repetitive bending and stooping and climbing ladders, rope, and scaffolds), the ALJ found that Plaintiff could stand for up to two hours and walk for up to one hour during an eight-hour workday, as Dr. Almquist opined. (A.R. 19-20, 136.)

It is not clear whether, if Dr. Almquist had reviewed the nearly 50 pages of additional evidence contained in the record at A.R. 140-87, his opinion regarding Plaintiff's RFC would remain the same. At a minimum, Dr. Almquist did not review the results of the updated diskogram. *See, e.g.*, Matney, 981 F.2d at 1019 (opinion of either a treating or examining physician should be supported by clinical findings). Indeed, the evidence that Dr. Almquist did review (at A.R. 78-131) is

12

approximately only half of the medical evidence in the record.  Because Dr. Almquist's assessment of Plaintiff's RFC during the period at issue is not based on the entirety of the record, it does not constitute substantial evidence.  *See* <u>Morgan</u>, 169 F.3d at 600 (medical expert opinions constitute substantial evidence when they are supported by the record and consistent with it).  The ALJ should clarify and develop the record regarding Plaintiff's RFC by eliciting an opinion from a medical expert, an examining doctor, or one of Plaintiff's treating doctors, based on *all* the relevant medical evidence.  20 C.F.R. §§ 404.1545(a), 416.945(a) (RFC is an assessment based upon all of the relevant evidence); *see also* 20 C.F.R. §§ 404.1519a(b), 416.919a(b) (listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity, or insufficiency in the evidence); 20 C.F.R. §§ 404.1517, 416.917 (when a claimant's medical sources provide insufficient evidence in order to determine whether the claimant is disabled, a consultative examination may be ordered); <u>Brown v. Heckler</u>, 713 F.2d 441, 442-43 (9th Cir. 1993)(Commissioner has an affirmative duty to develop the record, even if the claimant is represented by counsel).

Accordingly, the ALJ's finding regarding Plaintiff's RFC constitutes reversible error.

**B.   <u>The ALJ's Finding Regarding Plaintiff's Claimed Limitations And Pain Constitutes Error</u>.**

The law is well-settled that, once a disability claimant produces objective medical evidence of an underlying impairment, the ALJ may not

13

discredit the claimant's testimony as to her subjective symptoms merely because they are not corroborated by objective evidence. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1147-48 (9th Cir. 2001); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991); <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989). As the Ninth Circuit has explained:

> [A]n ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. But, because a claimant need not present clinical or diagnostic evidence to support the severity of his pain, *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (stating that "it is the very nature of excess pain to be out of proportion to the medical evidence"), a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.

<u>Light v. Social Security Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997). This rule is based on the recognition that pain is an inherently subjective phenomenon, which cannot be objectively verified or measured and varies significantly among individuals. <u>Bunnell</u>, 947 F.2d at 347.

Unless the evidence suggests affirmatively that a claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's excess pain or symptom testimony, such as conflicts between the claimant's testimony and conduct, or internal contradictions in the claimant's testimony. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993); <u>Light</u>, 119 F.3d at 792. In determining whether a claimant's testimony regarding the severity of his symptoms is

credible, the ALJ may consider: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen, 80 F.3d at 1284.

The Court will give great weight to the ALJ's credibility assessment. Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Brawner v. Secretary, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the ALJ's credibility determination is to be given great weight when supported specifically). However, when an ALJ's decision rests on a negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." Cequerra v. Secretary, 933 F.2d 735, 738 (9th Cir. 1991); Oreteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(the ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."). When discrediting a claimant's testimony, it is not enough for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests that the complaints are not credible. See Swenson v. Sullivan, 876 F.2d 683, 688 (9th Cir. 1979); see also Lester, 81 F.3d at 834 (an ALJ may reject a plaintiff's testimony based on lack of credibility only if the ALJ states specific and cogent reasons for doing so).

In assessing Plaintiff's credibility, the ALJ stated:

[Plaintiff] maintains he is unable to work due to his alleged subjective symptoms.  However, the record does not indicate that [Plaintiff] is described as a surgical candidate, nor is there any evidence he has required any extended periods of hospital confinement, or emergency room treatment. [Plaintiff] has no consistent abnormalities of gait, nor are any assistive devices required.  While [Plaintiff] asserted a chronic and debilitating pain syndrome of extended duration, it is noted that he has exhibited no evidence of diffuse atrophy or muscle wasting, common indicators of chronic pain. At the hearing, [Plaintiff's] thoughts did not seem to wander and all questions were answered alertly and appropriately. There is no credible evidence of regular usage of strong medication to alleviate pain that would significantly impair [Plaintiff's] ability to do basic work activities.  There was no evidence in the medical record of any significant side effects.  Accordingly, the undersigned concludes [Plaintiff's] testimony and evidence, although appearing sincere, is not fully credible regarding the extent, intensity and duration of the alleged subjective symptoms and functional limitations and restrictions.

(A.R. 17.)

Plaintiff contends that the ALJ improperly discredited his testimony as to his pain and limitations. (Joint Stip. at 14-17.)

16

Specifically, Plaintiff testified as to his limitations at the May 6, 2003 hearing that: he could stand for approximately a half hour, walk approximately four blocks, and sit for a half hour. (A.R. 202.) He further testified that: he has muscle spasms in his back which radiate mostly to his right leg; he has difficulty bending at the waist; and he has weakness in his legs. (A.R. 206-07.)

The ALJ's finding as to Plaintiff's claimed pain and limitations is improper for several reasons. Here, Plaintiff has testified regarding specific symptoms and limitations, and the ALJ failed to properly delineate or differentiate his reasons for rejecting each of these claimed symptoms and limitations. *See* <u>Swenson</u>, 876 F.2d at 688.

Furthermore, the ALJ's reasoning that Plaintiff has not required the use of strong medication for pain relief is flatly belied by the record. Plaintiff testified at the hearing that he had taken Vicodin periodically since his injury and had been taking OxyContin for approximately three months. (A.R. 200.) This testimony is consistent with the medical evidence. For instance, in August 2002, Plaintiff was taking Vicodin for pain relief. (A.R. 112.) In a November 4, 2002 report, Dr. Helm prescribed OxyContin, a powerful narcotic pain reliever. (A.R. 176.) In a January 3, 2003 report, Dr. Helm noted that a dosage of 25 milligrams of Duragesic, another powerful narcotic pain reliever, had no effect on Plaintiff's pain, and Plaintiff reported more relief by taking 20 milligrams of OxyContin twice daily but nonetheless

17

was requesting an increased dosage.[5]   (A.R. 157.)   In Dr. Piasecki's January 13, 2003 report, he noted that Plaintiff was taking OxyContin, as well as Darvocet, another narcotic pain reliever, for relief of break-through pain.   (A.R. 167.)

While the ALJ found that Plaintiff suffered no side effects from such medication, it is unclear what impact such potent medication would have on Plaintiff's ability to perform work as a cabinet finisher or cabinet assembler, which would require Plaintiff to use potentially dangerous tools.[6]   The record does not indicate that the ALJ questioned

---

[5]   The manufacturer of Vicodin provides:   "Hydrocodone [Vicodin ES], like all narcotics, may impair the mental and/or physical abilities required for the performance of potentially hazardous tasks such as driving a car or operating machinery; patients should be cautioned accordingly."   PHYSICIAN'S DESK REFERENCE, p. 1487 (53d ed. 1999).

The warning from the manufacturer of Duragesic provides: "[Duragesic] may impair mental and/or physical ability required for the performance of potentially hazardous tasks (e.g. driving, operating machinery).   Patients who have been given [Duragesic] should not drive or operate dangerous machinery unless they are tolerant to the side effects of the drug."   *Id*. at 1420.

The warning from the manufacturer of OxyContin provides: "Patients should be advised that OxyContin may impair mental and/or physical ability required for the performance of potentially hazardous tasks (e.g., driving operating heavy machinery)."   *Id*. at 2572.

[6]   The job description for a "cabinet assembler" is:

Assembles radio, television, and phonograph cabinets, using handtools: Fits prefabricated wooden parts together. Trims and smooths parts to fit, using handtools and sandpaper. Inserts screws or dowels in predrilled holes, and fastens parts together with screwdriver, glue, and clamps. Installs hardware, such as hinges, catches, and knobs, on assembled cabinet. May cut baffle cloths and plastic screens to specified size and install them in cabinets, using hand or machine cutters, screwdriver, and stapling gun.

The job description for a "cabinet finisher" is:

18

Plaintiff as to any side effects he experienced from taking such medication at the hearing.

In addition, the ALJ improperly reasoned that Plaintiff's back condition was not disabling, because it did not require surgery and had not caused diffuse atrophy or severe muscle wasting.   In fact, Plaintiff's physicians recommended a non-invasive procedure, an IDET (A.R. 176-77, 185), and while Plaintiff had been referred to surgery at one point, Dr. Pasecki explained that surgery would not be appropriate because it likely would increase Plaintiff's pain and disability (A.R. 185).   In any event, there is no requirement that a claimant's lumbar condition require surgery in order for it to be disabling.   Like surgery, the presence of muscle-wasting and atrophy, an indication of complete inactivity, is not a prerequisite to a disability finding. *See, e.g.,* <u>Cooper v. Bowen</u>, 815 F.2d 557, 561 (9th Cir. 1987)(disability claimant need not "vegetate in dark room" in order to be deemed eligible for benefits).

Accordingly, the ALJ's finding regarding Plaintiff's limitations and pain testimony constitutes error.

---

Assembles metal cabinets: Inserts pins in hinges to attach doors to cabinet. Attaches stationary knobs in place with screws. Fits, assembles, and attaches locks to doors. Measures and drills support holes in shelves and shelf brackets and screws shelves in place. Adjusts doors, knobs, and shelves to fit by bending, filing, or hammering them, using handtools.

Dictionary of Occupational Titles, Nos. 763.684-014, 703.684-014 (4th ed., revised 1991).

19

**C.    Remand Is Necessary.**

In view of the ALJ's need to reassess Plaintiff's RFC and his errors in rejecting Plaintiff's testimony regarding his limitations and pain, this action must be remanded. *See* <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004)(where ALJ erred by discounting treating physicians' opinions, remand for further proceedings is appropriate if enhancement of the record would be useful); <u>Higbee v. Sullivan</u>, 975 F.2d 558, 561-62 (9th Cir. 1991)(remanding case in order to develop the record); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

///
///
///
///
///
///
///
///

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July 27, 2006

                                        /s/
                              MARGARET A. NAGLE
                     UNITED STATES MAGISTRATE JUDGE